Justin T. Toth (8438)
Nathan L. Jepson (17414)
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
Salt Lake City, Utah 84111
Telephone: (801) 532-1500
Email: jtoth@rqn.com
       njepson@rqn.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# DISTRICT OF UTAH

| | |
|---|---|
| KNS INTERNATIONAL, LLC and PINNACLE IP, LLC,<br><br>Plaintiff,<br><br>v.<br><br>MYSTEP-GLOBAL LLC,<br><br>Defendants. | **COMPLAINT**<br><br>Civil Action No._____ |

Plaintiffs KNS International, LLC ("KNS" or the "Company") and Pinnacle IP, LLC ("Pinnacle," together with KNS, "Plaintiffs"), for their Complaint against Defendant MyStep-Global LLC ("MyStep" or "Defendant"), allege, upon knowledge as to their own conduct and information and belief as to the conduct of others, as follows:

## NATURE OF THE ACTION

1. Plaintiffs are wholly-owned subsidiaries of KNS Brand Holdings, LLC, a portfolio company of Centre Partners Management LLC ("Centre Partners"). Plaintiff KNS designs and distributes high-quality footwear products marketed and sold throughout the United States. KNS's

sister company, Plaintiff Pinnacle, owns brands including JOURNEE and VANCE (the "Pinnacle Marks") and licenses them to KNS for use in connection with its well-regarded footwear designs. KNS is the exclusive licensee of the Pinnacle Marks.

2. In 2023, KNS hired Greg Tunney to serve as KNS's Chief Executive Officer. At the time of his hire by KNS and at all times relevant to this action, up to and including today, Tunney has been founder, Chairman and Principal of MyStep, a company that manufactures and sells third-party branded accessory footwear such as slippers and flipflops.

3. Pursuant to his November 13, 2023 employment agreement with KNS (the "Employment Agreement"), Tunney was permitted to continue in his ownership and involvement in MyStep even during his employment with KNS. However, Tunney's Employment Agreement expressly prohibited him from causing KNS to do business with MyStep without the prior express written approval of Centre Partners. MyStep knew of this restriction on Tunney's activities.

4. In or around June 2025, Tunney sought to have MyStep license the Pinnacle Marks for use on its slippers and distribute and sell those slippers to stores such as TJMaxx, Marshalls, Burlington, and JC Penney. But when Tunney approached Centre Partners to obtain approval for KNS to enter into a licensing agreement with MyStep, Centre Partners did not give its approval and expressly instructed Tunney not to proceed with any such arrangement.

5. Tunney and MyStep ignored this directive. In or about July 2025, unbeknownst to Centre Partners or Plaintiffs, MyStep began producing cheap accessory footwear bearing counterfeit versions of the Pinnacle Marks and distributing the infringing footwear to be sold at discount retailers across the country. Even after Plaintiffs became aware of MyStep's unlawful conduct following Tunney's termination as CEO of KNS in August 2025, and demanded that

MyStep cease and desist its flagrant infringement, MyStep continued to manufacture, market, and sell products bearing counterfeit versions of the Pinnacle Marks without license or authorization.

6. By deliberately infringing the Pinnacle Marks and applying counterfeit imitations of the Pinnacle Marks to its own footwear products, MyStep seeks to appropriate Pinnacle's well-known Marks, to trade on the goodwill associated with the Pinnacle Marks, and to confuse and deceive both individual and corporate consumers that come across MyStep's unauthorized use.

7. To protect their rights, reputation, and the goodwill in the Pinnacle Marks, Plaintiffs bring claims of trademark counterfeiting and trademark infringement under Section 32(1) of the Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. § 1114; false designation of origin and unfair competition under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125; and trademark infringement under Section 70-3a-402 of the Utah Code.  Plaintiffs seek preliminary and permanent injunctive relief, statutory damages of $2,000,000 per counterfeit mark per type of goods sold, actual damages and profits of Defendant as provided by 15 U.S.C. § 1117, attorneys' fees, pre-judgment interest, costs, and expenses, and such other relief as the Court deems just and proper.

## PARTIES, JURISDICTION, AND VENUE

8. Plaintiff KNS International, LLC is a private corporation organized under the laws of Delaware with a principal place of business at 12552 South Lone Peak Parkway Suite 200, Draper, Utah 84020.

9. Plaintiff Pinnacle IP, LLC is a private corporation organized under the laws of Delaware with a principal place of business at 12552 South Lone Peak Parkway Suite 200, Draper, Utah 84020.

10. Defendant MyStep is a Utah limited liability company with its principal place of business at 9182 N. Uinta Circle, Kamas, Utah 84036.

11. The Court has original jurisdiction over the subject matter of this action pursuant to Section 39 of the Lanham Act, 15 U.S.C. § 1121, and under Sections 1331, 1338(a) and 1338(b) of the Judicial Code, 28 U.S.C. §§ 1331, 1338(a), and 1338 (b). The Court has supplemental jurisdiction over the state law claims under Section 1367(a) of the Judicial Code, 28 U.S.C. § 1367(a).

12. This Court has personal jurisdiction over Defendant because at all relevant times it has resided in Utah.

13. Venue is proper in the District of Utah because Defendant at all relevant times has resided in this District and because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District. *See* 28 U.S.C. § 1391(c)(1) and (2) and (b)(2); 28 U.S.C. § 112(b).

## FACTUAL ALLEGATIONS

### A. Plaintiffs and Their Business Under Plaintiffs' Marks

14. Plaintiffs are both subsidiaries of KNS Brands Holdings and are sister companies.

15. Plaintiff KNS holds an exclusive license from Plaintiff Pinnacle to use the Pinnacle Marks in connection with several lines of well-regarded footwear, including those bearing the JOURNEE and VANCE marks.

16. Pursuant to its license, KNS uses the JOURNEE mark on or in connection with women's footwear, including flats, heels, boots, and slippers.

17. JOURNEE-branded shoes are known for their great comfort and style. The JOURNEE brand has received particular attention and praise for the "fit inclusivity" of its expanded size range, which includes wide-width shoes and boots for wider calves.

18. KNS uses the VANCE mark on or in connection with men's footwear, including boots, dress shoes, sneakers, and slippers.

19. Like JOURNEE footwear, VANCE-branded shoes are well-known for their combination of comfort and value.

20. As a result of its success marketing and selling footwear under the licensed Pinnacle Marks, KNS has become one of the fastest-growing footwear companies in the United States.

21. Plaintiffs have invested a substantial amount of time, effort, and money in advertising and promoting the Pinnacle Marks worldwide.

22. Owing to Plaintiffs' long, exclusive, and extensive use of the Pinnacle Marks, the Pinnacle Marks enjoy considerable goodwill in the United States and elsewhere, identify and distinguish Plaintiffs' goods from those of others, and have become a valuable asset of Plaintiff Pinnacle.

23. In addition to the common law rights in the Pinnacle Marks built up over many years of use, Pinnacle has obtained federal registration of many of the Pinnacle Marks, including but not limited to the following:

| *Mark* | *U.S. Reg. No.* | *Class and Goods* |
|---|---|---|
| JOURNEE COLLECTION | 5548853 | Class 14: Jewelry; Watches<br>Class 18: Handbags; Purses; Wallets<br>Class 25: Belts; Blouses; Dresses; Footwear; Gloves; Jackets; Pants; Shirts; Shorts; Skirts; Sweaters; Sweatshirts; T-shirts |
| JOURNEE SIGNATURE | 5825708 | Class 25: Footwear; Shoes |
| VANCE CO. | 5244808 | Class 25: Shoes |
| VANCE | 7659604 | Class 25: Footwear; Shoes |

24. These registrations for the Pinnacle Marks are valid, subsisting, and in full force and effect. Many of the registered marks referred to above have become incontestable and therefore constitute conclusive evidence of the validity of the marks and Pinnacle's right to use the specified marks in connection with the identified goods.

  **B. Tunney's Employment With KNS and the Employment Agreement**

25. On November 13, 2023, KNS and Tunney entered into the Employment Agreement and Tunney became the Chief Executive Officer of KNS, a position that he held until he was terminated on or about August 18, 2025.

26. Under Section 4.4 of Tunney's Employment Agreement, Tunney was permitted to continue his work as Chairman and principal of MyStep even while he served as CEO of KNS, but was required to "obtain **advance written approval** from Centre Partners Management LLC to

6

the extent that [KNS] seeks to conduct business with My StepGlobal, LLC [sic] or any of its affiliates during [his] Term of Employment." *Id*. (emphasis added).  Empl. Agr. ¶ 4.4.

27.     On or around June 4, 2025, Tunney proposed to Centre Partners that KNS enter into a licensing agreement with MyStep pursuant to which MyStep would license the Pinnacle Marks for use on MyStep's slippers, flipflops and other "accessory footwear" products in return for payment of a royalty on the net sales of all products sold bearing Plaintiffs' Marks.

28.     However, Centre Partners did not approve the proposed arrangement, or any other arrangement whereby MyStep would use the Pinnacle Marks, and instead instructed Tunney not to proceed with his proposed licensing plan.

29.     Despite this express directive, and without Centre Partners' knowledge, MyStep-Global manufactured slippers and flipflops bearing counterfeit versions of the Pinnacle Marks and marketed and sold its infringing products to discount retailers for sale to consumers.

30.     On August 18, 2025, Tunney's employment with KNS was terminated.

31.     Shortly following Tunney's separation from KNS, on or about September 26, 2025, KNS became aware that MyStep had manufactured unauthorized footwear products bearing counterfeit versions of the Pinnacle Marks and that MyStep was actively marketing and selling those products to off-price channel stores where KNS does not sell products, in clear violation of Plaintiffs' exclusive rights in the Pinnacle Marks and despite knowing that Tunney had not obtained the "advance written approval from Centre Partners Management LLC" that MyStep knew was required under Tunney's Employment Agreement.  Empl. Agr. ¶ 4.4.

32. On or about September 26, 2025, Centre Partners contacted MyStep on behalf of KNS to demand that MyStep immediately stop any and all manufacture, shipment, and sale of infringing footwear products bearing counterfeit versions of the Pinnacle Marks.

33. On October 2, 2025, counsel for KNS again demanded that MyStep immediately cease and desist the manufacture, shipment and sale of footwear bearing counterfeit versions of the Pinnacle Marks.

34. On October 5, 2025, Tunney wrote to counsel for KNS on behalf of MyStep and represented that "MSG [MyStep-Global] will cease and desist shipping Journee and Vance product."

35. Notwithstanding KNS's demands and Tunney's written assurances, MyStep continued to manufacture, ship, and sell unauthorized products bearing counterfeit imitations of the Pinnacle Marks.

C. **Defendant's Infringement of the Pinnacle Marks**

36. By virtue of Pinnacle's federal registrations, MyStep is and has been at all relevant times on constructive notice of Plaintiffs' exclusive rights in the Pinnacle Marks.

37. In addition, MyStep has actual knowledge of Plaintiffs' exclusive rights in the Pinnacle Marks, given that Tunney was and is the founder, Chairman and Principal of MyStep and was previously the CEO of KNS, which is the exclusive licensee of the Pinnacle Marks, and that Tunney sought permission from Centre Partners to license the Pinnacle Marks to MyStep.

38. Even after KNS demanded that MyStep cease its unlawful conduct, MyStep has continued to manufacture, market, distribute, and sell infringing products bearing counterfeit versions of the Pinnacle Marks and continues this misconduct to this day.

39. MyStep designed its infringing products to deceive consumers into believing that the infringing products were produced and/or authorized by Plaintiffs and to exploit the renown of the Pinnacle Marks by drawing users looking for legitimate products bearing the Pinnacle Marks.

40. MyStep's distribution and sale of products bearing counterfeit versions of the Pinnacle Marks is causing actual confusion in the marketplace, with consumers and/or corporate purchasers mistakenly assuming that MyStep and its products are associated with or sponsored or approved by Plaintiffs.

41. Given the nature of KNS's footwear products, consumers of KNS's products are unlikely to exercise great care or to undertake significant investigation in connection with their purchases, which heightens the likelihood that consumers will be confused into believing that Plaintiffs have approved or are associated with MyStep's accessory footwear bearing counterfeit versions of the Pinnacle Marks.

42. MyStep's ongoing infringement of the Pinnacle Marks unfairly and unlawfully wrests from Pinnacle control over the Pinnacle Marks and all associated reputation and is unjustly enriching MyStep.

43. MyStep's deliberate and knowing infringement of the Pinnacle Marks is intentionally malicious, willful and wanton, and seeks to unfairly take for itself the benefit of the hard-earned goodwill Pinnacle has built up over many years of use and authorized licensure of the Pinnacle Marks.

44. MyStep's use of counterfeit versions of Plaintiffs' Marks in connection with its unauthorized footwear products is likely to cause confusion, mistake, or to deceive consumers, and threatens to destroy the commercial value of the rights held and licensed by Plaintiffs.

45. MyStep's conduct has caused and, unless enjoined by this Court, will continue to cause irreparable injury to Plaintiffs.

## COUNT I
## TRADEMARK COUNTERFEITING (15 U.S.C. § 1114)

46. Plaintiffs repeat each and every allegation contained above and below as if set forth fully herein.

47. Defendant is not and has not been licensed or authorized to use the Pinnacle Marks in connection with its infringing products.

48. Without authorization or license, and with full knowledge of Plaintiffs' prior rights in the Pinnacle Marks, Defendant has manufactured, advertised, offered for sale, sold, distributed, imported, and/or exported footwear products under or bearing counterfeit imitations of the Pinnacle Marks.

49. Defendant was on both constructive and actual notice of Plaintiffs' exclusive rights in the Pinnacle Marks prior to its unauthorized use of those marks.

50. Defendant's unauthorized use of the Pinnacle Marks is willful, in bad faith, and with full knowledge that Defendant has no right, license, or authority to use the Pinnacle Marks in connection with its infringing products.

51. Defendant's acts are intended wrongfully to reap the benefit of the goodwill and reputation inhering in the Pinnacle Marks.

52. Defendant's acts constitute counterfeiting of Pinnacle's federally registered Marks in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

## COUNT II
## TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)

53. Plaintiffs repeat each and every allegation contained above and below as if set forth fully herein.

54. Defendant is not and has not been licensed or authorized to use the Pinnacle Marks in connection with its infringing products.

55. Defendant's unauthorized use of infringing imitations of the Pinnacle Marks in connection with accessory footwear similar to the authorized footwear products offered by Pinnacle's authorized licensee, KNS, is likely to cause confusion or to cause mistake or to deceive the public as to the source or sponsorship of Defendant's goods.

56. Consumers are likely to be misled into believing that Defendant's goods marked with infringing imitations of the Pinnacle Marks are licensed by or otherwise approved by Plaintiffs' or that Defendant is affiliated with Plaintiffs, when that is not the case.

57. Defendant was on both constructive and actual notice of Pinnacle's exclusive rights in the Pinnacle Marks prior to its unauthorized use of those marks.

58. Defendant's unauthorized use of the Pinnacle Marks is willful, in bad faith, and with full knowledge of the goodwill and reputation associated with the Pinnacle Marks and belonging exclusively to Pinnacle, and with full knowledge that Defendant has no right, license, or authority to use the Pinnacle Marks.

59. Defendant's acts are intended to reap the benefit of the goodwill that Pinnacle has created in the Pinnacle Marks.

60. Defendant's acts constitute infringement of Pinnacle's federally registered marks in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

61. Defendant's conduct has caused and is causing immediate and irreparable injury to Pinnacle and its exclusive licensee, KNS, and, unless enjoined by this Court, will continue to both damage Plaintiffs and deceive the public.

62. Plaintiffs have no adequate remedy at law.

## COUNT III
## UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125)

63. Plaintiffs repeat each and every allegation contained above and below as if set forth fully herein.

64. Defendant's unauthorized and unlicensed use of infringing imitations of the Pinnacle Marks constitutes false designation of origin and false representation with respect to the origin and nature of Defendant's goods and services.

65. Defendant's use of infringing imitations of the Pinnacle Marks is likely to cause confusion, mistake, or deception as to the source of Defendant's goods and services and is likely to create the false impression that Defendant is affiliated with one or both of Plaintiffs or that its goods and services are authorized, sponsored, endorsed or licensed by, or affiliated with, Plaintiffs, when that is not the case.

66. Defendant's use of infringing imitations of the Pinnacle Marks on its unauthorized, unlicensed goods threatens to destroy the value, exclusivity, and reputation of the Pinnacle Marks.

67. Defendant's conduct has caused and is causing immediate and irreparable injury to Plaintiffs and, unless enjoined by this Court, will continue to damage Plaintiffs and deceive the public.

68. Defendant's actions constitute unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

69. Plaintiffs have no adequate remedy at law.

## COUNT IV
## TRADEMARK INFRINGEMENT (Utah Code § 70-3a-402)

70. Plaintiffs repeat each and every allegation contained above and below as if set forth fully herein.

71. Defendant is not and has not been licensed or authorized to use the Pinnacle Marks purpose in connection with its infringing products.

72. Defendant's unauthorized use of infringing imitations of the Pinnacle Marks on or in connection with goods and/or services similar or identical to those offered by KNS and/or Pinnacle under the Pinnacle Marks is likely to cause confusion or to cause mistake or to deceive the public as to the source or sponsorship of Defendant's goods and services. More specifically, consumers are likely to be misled into believing that Defendant's goods and services are licensed by or otherwise approved by Plaintiffs.

73. Defendant was on both constructive and actual notice of Pinnacle's exclusive rights in the Pinnacle Marks prior to its unauthorized use of those marks.

74. Defendant's unauthorized use of infringing imitations of the Pinnacle Marks is willful, in bad faith, and with full knowledge of the goodwill and reputation associated with the Pinnacle Marks, and with full knowledge that Defendant has no right, license, or authority to use the Pinnacle Marks in connection with its infringing products.

75. Defendant's acts are intended to reap the benefit of the goodwill that Plaintiffs have created in the Pinnacle Marks.

76. Defendant's acts constitute infringement of Pinnacle's federally registered marks in violation of Section 70-3a-402 of the Utah Code.

77. Defendant's conduct has caused and is causing immediate and irreparable injury to Plaintiffs and, unless enjoined by this Court, will continue to both damage Plaintiffs and deceive the public.

78. Plaintiffs have no adequate remedy at law.

## REQUEST FOR RELIEF

Plaintiffs reserve their rights to pursue any and all available remedies, including damages, punitive damages, exemplary damages, statutory damages, attorneys' fees, and any equitable remedies including without limitation an order of seizure, a temporary restraining order, and/or a permanent injunction.

WHEREFORE, Plaintiffs respectfully request judgment against Defendant as follows:

A. Entering a preliminary and permanent injunction enjoining Defendant, any entity owned, controlled or managed in whole or in part by Defendant, and the agents, privies, attorneys, servants, employees, affiliates, successors, assigns, and heirs of the foregoing and all others in active concert or participation with any of them from:

(i) manufacturing, producing, distributing, selling, offering, advertising, marketing, displaying, promoting, trading in, supplying, accepting orders for, or filling orders for any products bearing or services under the Pinnacle Marks or any other mark that incorporates the Pinnacle Marks or any simulation, reproduction, copy, colorable imitation, or confusingly similar variation thereof (collectively, "Prohibited Designations");

(ii) using the Pinnacle Marks, or any other Prohibited Designation, in or as part of a design, logo, service mark or trademark or otherwise using such a mark in connection with the importation, promotion, advertisement, sale, offering for sale, manufacture, production, or distribution of any business, product or service;

(iii) offering, advertising, or promoting any products or services under any name that includes, in whole or in part, any Prohibited Designations;

(iv) using any false designation of origin or false description (including, without limitation, any letters or symbols), or performing any act, which can, or is likely to, lead members of the trade or public to believe that Defendant is associated with Plaintiffs or that any product or service provided by Defendant is in any manner associated or connected with Plaintiffs, or is authorized, licensed, sponsored, or otherwise approved by Plaintiffs;

(v) filing, maintaining, or retaining any registration or application to register the Pinnacle Marks or any other Prohibited Designation;

(vi) engaging in any other activity constituting unfair competition with Plaintiffs or constituting infringement of one or more of the Pinnacle Marks;

(vii) registering, using or retaining any domain name, keyword, social media handle or other online designation or identifier that incorporates the Pinnacle Marks or any Prohibited Designation; and

        (viii)    assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (i) through (vii) above.

B. Directing that Defendant turn over to Plaintiffs for impoundment and eventual destruction, without compensation to Defendant, all materials in its possession or control that violate the provisions of paragraphs A(i)-(viii) above, along with all articles by means of which such infringing products may be reproduced;

C. Directing that Defendant, at its own expense, recall from any distributors, retailers, vendors, or others to whom it has distributed materials that violate the provisions of paragraph A(i)-(viii) above, and that Defendant deliver up to Plaintiffs for destruction all materials returned to them.

D. Entering an order directing that Defendant scrub any websites through which it sells, offers, promotes, markets, displays, advertises, or trades in any goods or services, of all references—both visible and in underlying metadata or source codes—of the Pinnacle Marks, or any other Prohibited Designation, and take all other actions as are necessary to ensure that all references it has made or that remain to any goods or services offered or sold under any one of the Pinnacle Marks, both visible and invisible, in all channels where it has advertised or offered for sale any products bearing any one of the Pinnacle Marks, including on websites, on social media pages, in source code, metatags, page tags, metadata, title tags, indices, or in brochures, catalogs, business materials, advertising, or other print or visual materials created by or for or used by Defendant, are permanently deleted or removed;

E.  Granting Plaintiffs monetary relief for Defendant's infringement of Plaintiffs' trademark rights, including Defendant's profits; Plaintiffs' actual damages; trebled damages and/or increased profits as provided by 15 U.S.C. § 1117(a); or, if Plaintiff Pinnacle elects, statutory damages as the Court considers just, up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale, or distributed, as provided by 15 U.S.C. § 1117(b) & (c);

F.  Awarding punitive and exemplary damages in favor of Plaintiffs in an amount to be determined by the Court;

G.  Awarding Plaintiffs their attorneys' fees and costs for this Action; and

H.  Granting Plaintiffs such other and further relief as this Court may deem just and proper.

DATED this 16th Day of January 2026.

RAY QUINNEY & NEBEKER P.C.

/s/ *Justin T. Toth*
Justin T. Toth
Nathan L. Jepson
*Attorneys for KNS International, LLC and Pinnacle IP, LLC*

Jennifer Insley-Pruitt (*pro hac vice forthcoming*)
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036-6797
jennifer.insley-pruitt@dechert.com
Telephone:  (212) 698-3500
Facsimile:  (212) 698-3599

J. Ian Downes (*pro hac vice forthcoming*)
Luke M. Reilly (*pro hac vice forthcoming*)
Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808
ian.downes@dechert.com
luke.reilly@dechert.com

*Attorneys for KNS International, LLC and Pinnacle IP, LLC*

1732337